## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | Adv Proc. No. 21-51177 |

Lonnie J. Washburn
  Plaintiff

Boy Scouts of America, Delaware BSA, LLC,
Future Claimant's Representative, The Coalition,
Tort Claims Committee, Creditors Committee

  Defendant(s)



---

## OPPOSITION TO MOTION TO STAY DISCOVERY, OR EXTEND
## DEADLINES TO COMPLY WITH DISCOVERY OBLIGATIONS

---

On 04/01/2022, The Debtors, Boy Scouts of America and Delaware BSA, LLC, (DEFENDANTS)

filed a MOTION TO STAY DiSCOVERY, OR EXTEND DEADLINES TO COMPLY WITH

DISCOVERY OBLIGATIONS, (MOTION). Lonnie J. Washburn, (PLAINTIFF), hereby

respectfully submits this OPPOSITION TO MOTION TO DELAY DISCOVERY, OR EXTEMD

DEADLINES TO COMPLY WITH DISCOVERY OBLIGATIONS.


### STATEMENT OF FACTS

On 09/22/2021 Plaintiff sent the Debtors a request for a Rule 2004 Examination of Boy Scout CFO,

Michael Ashline. It went ignored until 04/25/2022 when the Debtors finally filed a response with

the Court.

On 10/04/2021 Plaintiff filed a Motion requesting a Rule 2004 Examination of BSA CFO, Michael

Ashline with the Court.

On 10/04/2021, the Plaintiff filed an Adversary Action  based on the Defendants formation of a

Civil Conspiracy in which the Defendants breached their Fiduciary Duties, committed Willful

Misconduct, and Intentional Gross Negligence.  The Defendants Actions and inactions resulted in

damages to the Plaintiff financially, emotionally, leaving Plaintiff with legal exposure and

inadequate legal representation, and failed to maximize the size of the estate.

On 01/05/2022, the Debtors replied to Plaintiffs written questions directed to Mr. Ashline regarding

BSA Finances with some statements from lower financial staff. (EXHIBIT C))

02/23/2022 Plaintiff sent another request to Debtors requesting a Rule 2004 Exam of CFO Michael

Ashline with a list of Interogatories for Mr. Ashline.  Both went ignored.  (EXHIBIT D)

On March 2, 2022, Plaintiff sent out a request for a Rule 26(f) Conference. It was rejected by the

Debtors, and  went ignored by all other Defendants.  (EXHIBITS E, F)

03/25/2022

Plaintiff send out Initial Disclosures and E-Discovery to all Defendants. (EXHIBIT G)

Only 2 of the 7 parties have asked for a Stay of Discovery.

## ARGUMENT

1.  District courts have broad discretion in managing discovery. Crawford–El v. Britton, 523 U.S.

574, 598-99 (1998); Patterson v. Avery Dennison Corp., 281 F.3d 676, 681 (7th Cir. 2002). In

accordance with Federal Rule of Civil Procedure 26(c), a court may, for good cause, limit the scope

of discovery or control its sequence to "protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); see Crawford– El, 523 U.S. at

599; Tamburo v. Dworkin, No. 04 C 3317, 2010 WL 4867346, at *1 (N.D. Ill. Nov. 17, 2010).

2. There is no requirement that discovery cease during the pendency of a motion to dismiss.

See SK Hand Tool Corp. v. Dresser Industries, Inc., 852 F.2d 936, 945 (7th Cir. 1988); In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 331, 336 (N.D. Ill. 2005). Rather, the movant must show that good cause exists for the stay. The good cause determination encompasses factors such as whether the stay will prejudice the non-movant; whether the stay will simplify the issues in the case; and whether the stay will reduce the burden of litigation for the parties or the court. U.S. ex rel. Robinson v. Indiana Univ. Health Inc.,

3. Defendants first argue that the Court should enter a stay of discovery pending a ruling on their motions to dismiss because Plaintiff's complaint raises threshold issues of whether Plaintiff can state a cause of action. Courts consider threshold issues to be those such as standing, jurisdiction, or qualified immunity, which often support a discovery stay because such a defect "affirmatively demonstrates that a case can go nowhere." U.S. ex rel. Robinson, 2015 WL 3961221, at *7; see also Methodist Health Servs. Corp. v. OSF Healthcare Sys., No. 13–1054, 2014 WL 1797674, at *2 (C.D. Ill. May 6, 2014); Tamburo, 2010 WL 4867346, at *1.

4. Defendants further argue that discovery will have been unnecessary if the court dismisses the claims against them. Staying discovery could simplify the issues in the case by waiting to see which issues remain after the motion is decided. However, this argument unpersuasive because this is true anytime a dispositive motion is filed and granting a stay of discovery upon the filing of a motion to dismiss would "allow the exception to swallow the rule." Syngenta Seeds, Inc. v. BTA Branded, Inc., No. 05 C 6673, 2007 WL 3256848, at *2 (N.D. Ill. Nov. 1, 2007) Twombly, 550 U.S. 544, 558-59 (2007), the Supreme Court indicated that anti-trust cases are a typical type of case where discovery is so burdensome and costly that a stay pending decision on a motion to

dismiss may be appropriate. No such complication exists here. The plaintiff has very limited involvement over a short time with the Defendants. Defendants have not shown that allowing discovery to continue would be unduly burdensome. Nor do the Defendants provide any estimate of the cost associated with responding to the discovery, nor do they provide an affidavit or other support for their allegation of undue burden.1 Courts in this circuit find that broadly decrying the time and expense that is expected to be associated with responding to discovery, without any substantiation, does not establish good cause for staying discovery. See U.S. ex rel. Robinson, 2015 WL 3961221, at *5; Castrillon v. St. Vincent Hosp. & Health Care Ctr., Inc., No. 1:11-CV-00430- WTL, 2011 WL 4538089, at *2 (S.D. Ind. Sept. 29, 2011).

7. Finally, given Mr. Ashline's involvement with other Non-Debtor entities, (although allegedly only briefly) it is likely that Plaintiff could obtain discovery related to that involvement. As such, a stay in discovery would not necessarily prevent Plaintiff from obtaining information from Mr. Ashline by way of subpoena or deposition. This factor also weighs against a stay. See e.g., O'Conner, 2014 LEXIS 156141, at *8-9; E.E.O.C. v. Fair Oaks Dairy Farms, LLC, No. 2:11 CV 265, 2012 WL 3138108, at *3 (N.D. Ind. Aug. 1, 2012).

8. Plaintiff will be prejudiced if all discovery is stayed while waiting for defendants' motion to be decided. Given the extensive briefing on defendants' motion and the expected time it will take for the motion to be decided, the case will be in suspense for months if defendants' request is granted. Having filed their complaint plaintiffs have a right to move forward.

9. The Defendant's argument that "Discovery has not begun is clearly refuted by the facts. Exchanges have occurred in both directions.

10. In evaluating the Debtors arguments and the factors used to determine whether a stay of discovery is appropriate, there is not good cause to grant the stay, nor for the extension of deadlines. The Defendants have been on notice of the Discovery requests for over 8 months, and have chosen to ignore them.

11. Similarly, the Plaintiffs REQUEST TO EXTEND DEADLINES should be denied as it has the exact same result as Defendants MOTION TO STAY DISCOVERY. They seek to extend their deadlines to comply with ANY AND ALL Discovery, including COURT ORDERS, to 30 days beyond adjudication of the MOTION TO DISMISS.

12. For the above reasons, the Plaintiff requests that the Defendants Motions be DENIED.

Upon penalty of perjury, I swear the above is true and correct to the best of my knowledge.

Dated this 8th day of May, 2022

Lonnie Washburn
ATTORNEY PRO SE
3098 S. Highland Dr. STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com

# CERTIFICATE OF SERVICE

I certify that I mailed a true and correct copy of the attached

OPPOSITION TO MOTION TO STAY DISCOVERY, OR EXTEND DEADLINES TO

COMPLY WITH DISCOVERY OBLIGATIONS  vis U.S.P.S. First class mail, Postage Paid.

Boy Scouts of America and
Delaware BSA, LLC
1325 West Walnut Hill Lane
Irving, TX 75038

BROWN RUDNICK LLP
David J. Molton, Esquire
Eric R. Goodman
Seven Times Square
New York, New York 10036

Unsecured Creditors Committee
Reed Smith, LLP
ATTN:  Kurt F. Gwynne
120IN Market Street STE 1500
Wilmington, DE 19801

Tort Claimants Committee
Pachylski, Stang, Ziehl, and Jones
919 North Market Street STE 1700
Wilmington, DE 19801

Morris, Nichols, Arsht, Tunnell, LLP
Attn:  Derek Abbott
1201 N Market Street- 16th Floor
P.O. Box 1347
Wilmington, DE 19899-1347

Future Claimants Representative
Kenneth N. Enos
Rodney Square 1000 N King Street
Wilmington, DE 19801

MONZACK MERSKY & BROWDER, P.A.
Attn:  Rachel B. Mersky
1201 N. Orange Street, Suite 400
Wilmington, Delaware 19801

Dated this 9th day of May, 2022.



_____

Rodrigo Sagrado, Jr.

# EXHIBITS FOR
# OPPOSITION TO MOTION TO DELAY
# DISCOVERY OR EXTEND DEADLINES

FILED

2022 MAY 10  PM 6: 52

CLERK
BANKRUPTCY COURT
DISTRICT OF DELAWARE

# LONNIE WASHBURN



PLAINTIFF'S
EXHIBIT

A

September 22, 2021

To white and Case., LLC.:

Pursuant to Delaware Bankruptcy Court Local Rule 2004-1 I am attempting to schedule a telephone conference  to schedule a Rule 2004 Examination with Mike Ashline, CFO of Boy Scouts of America.  Please let me know when you're available. and what number I may  reach you to schedule that examination of your client. I look forward to hearing from you.

Regards,

Lonnie Washburn



## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE  FILED

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | **2021 OCT -4 PM 3:02** <br> CLERK <br> Case No. 20-10343 (LSS) U.S. BANKRUPTCY COURT <br> DISTRICT OF DELAWARE |
| Debtors. | (Jointly Administered) <br> Hearing Requested 09/30/2021 <br> Objections due by 10/06/2021 |

## WASHBURN'S MOTION FOR RULE 2004-1 EXAMINATION AND PRODUCTION OF DISCOVERY RECORDS HELD BY NATIONAL BSA AND LOCAL CROSSROADS OF THE WEST COUNCIL

Lonnie J. Washburn
ATTORNEY PROSE
3098 South Highland Drive STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com



PLAINTIFF'S
EXHIBIT

**B**

Movant, Lonnie J. Washburn, a claim holder in the above captioned matter,

respectfully files this  MORION FOR RULE 2004-1 EXAMINATION AND-

PRODUCTION OF DISCOVERY RECORDS HELD BY NATIONAL BSA AND

LOCAL CROSSROADS OF THE WEST COUNCIL.

Moveant, Lonnie J. Washburn, states the following:

1). I have made the required attempts to set a Rule 2004 Examination as required

by Local Rule 2004-1.

2). The request for the Examination have been ignored.

3). The requests for the production of records were answered, but claiming there

are too many boxes to look through. Nothing was produced (Exhibits 1,2,3)

Pursuant to Rule 2004-1 Moveant requests relief in the form of the attached order,

or substantially similar, as well as any additional remedies the Court sees fit.

Dated this 30th day of September, 2021.

I swear that the above information is true and correct to the best of my knowledge.

Lonnie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:

**BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,**[1]

                Debtors.

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

**PROPOSED ORDER**

Pursuant to Local Rule 2004-1 t he Court ORDERS the BSA of America and local Council

Crossroads of the West council to PRODUCE any and all records pertaining to Lonnie J.

Washburn by 10/20/2021.

The Court further ORDERS Crossroads of the West Council and BSA of America to allow Lonnie

J. Washburn to inspect the records of the premesis held by local council by 10//20/2021

The court further ORDERS BSA of America to produce/make available Mike Ashline, CFO of

BSA of America for a Rule 2004 Examination by 10/20/2021 for at least six consecutive hours

with two twenty minute breaks.

It is so ORDERED.

_____

Judge Laurie Selber Silverstein

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

In re:

BOY SCOUTS OF AMERICA AND
DELAWARE BSA, LLC,[1]

Debtors.

Jude:  Silverstein

Chapter 11

Case No. 20-10343 (LSS)

(Jointly Administered)

**NOTICE OF HEARI NG**

**HEARING DATE**

**OBJECTIONS DUE BY:**

A hearing in the above entitled matter for WASHBURN's MOTION FOR RULE 2004-1

EXAMINATION AND PRODUCTION  OF DISCOVERY RECORDS HELD BY

NATIONAL BSA AND LOCAL CROSSROADS OF THE WEST COUNSIL is scheduled

for a hearing on:

Dated this 30th day of September 2021

Connie J. Washburn
ATTORNEY PRO SE
3098 South Highland Drive STE 101
Salt Lake City, UT 84106
Tel.: (801) 548-6884
collinlongshanks@gmail.com











Screenshots of Lonnie Washburn's Email request and telephone call requesting Scout Records held by Crossroads of the West local council and Request by National Council for the records as a prerequisite to obtaining counseling. And Local councils Response.





LONNIE WASHBURN

Lonnie Washburn's email delivery of Request for Rule 2004-1 Examination

# LONNIE WASHBURN



EXHIBIT
3

September 22, 2021

To white and Case., LLC.:

Pursuant to Delaware Bankruptcy Court Local Rule 2004-1 I am attempting to schedule
a telephone conference to schedule a Rule 2004 Examination with Mike Ashline, CFO
of Boy Scouts of America. Please let me know when you're available. and what number
I may reach you to schedule that examination of your client. I look forward to hearing
from you.

Regards,

Lonnie Washburn




.ıll AT&T 📶          11:31 PM          🔋 100% 💡
                    6 Messages
< Inbox   BSA | 2004 Moti...   ∧   ∨

**PT**   **Paige Topper**          1/5/22
         To: callinlongsh... & 1 more >

Collin,

We have discussed your questions with the
Debtors' financial advisors, Alvarez & Marsal.
The Debtors' responses are in bold and italics
below. We would like to schedule a call to discuss
your 2004 motion and adversary proceeding.
Please let us know if you are available next
Tuesday, January 11, 2022 at 2:30 p.m. (ET).

- Questions regarding Local Council
  Withdrawals and the Commingled Endowment
  Fund
    - Were the Commingled Endowment
      funds held in trust? *The BSA and Local
      Councils are limited partners in the
      Commingled Endowment Fund, LP
      ("CEF"). To the extent that the BSA's
      or Local Councils' investments/interest
      in the CEF have donor or other legal
      restrictions those funds are held in trust
      according to the intent of the
      restriction.*

    - Further information regarding the
      reported change in Commingled Funds
      between 2015 and 2019. *The CEF
      balance was ~$502M in 2015,
      decreasing to ~$321M in 2019. The
      majority of this decrease is attributed to
      BSA withdrawing its unrestricted funds
      (~$200M in 2019) to fund cash
      collateral requirements, insurance
      premium payments, restructuring
      professional fees/administration costs,
      and other operating cash needs. Other
      changes relate to investment gains and
      Local Council deposits and
      withdrawals, which in aggregate were
      effectively neutral during the period.*

- Question regarding Commingled Investments
    - Further clarity on the changes in the
      reported numbers for commingled
      investments year over year. *Changes
      would be a combination of investment
      earnings/losses, deposits of new
      donations, withdrawals for spending
      according to fund guidelines, etc.*

    - Are such funds estate assets? If not,
      why not? *In general, the funds
      contributed to the CEF that are
      invested by the BSA are estate assets.
      However, if those funds have donor or
      other legal restrictions, they may not be
      available to pay creditors. Funds
      invested in the CEF by Related Non-
      Debtor Entities and/or Local Councils
      are not assets of the estate.*
    - Are the funds withdrawn by Local
      Councils at the end of 2019 subject to
      claw back? *The Local Councils are not
      in bankruptcy so there is no provision
      for claw back; the Local Councils
      control their own funds and
      investments and can deposit/withdraw
      their funds as they see fit. The BSA
      does not have control as to how the
      Councils invest and spend their own
      funds.*
    - Why did the BSA allow Local Councils
      to withdraw? *The Local Councils
      control their own funds so the BSA has
      no say if and how the Councils invest
      and spend their own funds.*



**PLAINTIFF'S EXHIBIT**

**C**

DISCOVERY FROM DEBTORS IN RESPONSE TO

QUESTIONS ASKED OF MICHAEL ASHLINE

- Questions about Land Assets and Unrestricted
  Assets
    - At the end of 2017, BSA reported land
      assets in the amount of $483 million.
      The Disclosure Statement reports $201
      million in land assets. Further
      information on why the number has
      changed. *To clarify, the line on the
      BSA's balance sheet is "Land, buildings
      & equipment", not just "Land" as
      stated in Mr. Washburn's request. With
      that clarification, the BSA agrees that
      the value of "Land, buildings &
      equipment" as of 12/31/2017 was $483
      million. On page 379 of 441 of the
      "solicitation version" of the Disclosure
      Statement [D.I. 6445], the pro-forma
      balance sheet as of 12/31/2021 shows
      "Land, building & equipment"
      forecasted to be $465 million pre-
      emergence from bankruptcy and $462
      million post-emergence. The change
      from 2017 to pro-forma 2021 of
      approximately $20 million is negligible
      (4%). (Note: The $201 million reflects
      the appraisal value of national
      headquarters, Philmont, Florida Sea*

$700 million. The Disclosure Statement
reports $144 million in total unrestricted
assets. Further information on why the
number has changed. *Per the BSA's
balance sheet as of 12/31/2017, its
Unrestricted Net Assets were $537
million (not "over $700 million").
(Note: The $700+ million figure
includes ~$230 million of non-
controlling Local Council investments,
which are not included as the BSA's
unrestricted net assets in the Disclosure
Statement.) On page 379 of 441 of the
"solicitation version" of the Disclosure
Statement [D.I. 6445], the pro-forma
balance sheet as of 12/31/2021 shows
Unrestricted Net Assets forecasted to be
$116 million pre-emergence from
bankruptcy and $141 million post-
emergence. The decrease from 2017 is
largely attributable to reduced cash
from operational use and the cost of the
bankruptcy.*

**PAIGE N. TOPPER**
ASSOCIATE | Morris, Nichols, Arsht & Tunnell
LLP



February 22, 2022

To Boy Scouts of America and Delaware BSA, LLC.:

White & Case, LLC.:

I hereby renew my request for a Rule 2004-1 Examination of Boy Scout of America CFO, Mike Ashline. I suggest March 04, 2022 at 10:00am ET or alternatively March 07, 2022 at 1:00pm ET.

Please find the attached areas of concern to be addressed with Mr. Ashline.

Regards,

Lonnie J. Washburn
ATTORNEY PRO SE
3098 S. Highland Dr. STE 101
Salt Lake City, UT 84106
Tel.: (801-548-6884)
collinlongshanks@gmail.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,[1] | Case No. 20-10343 (LSS) |
| | (Jointly Administered) |
| Debtors. | |

AREAS OF QUESTIONING FOR RULE 2004-1 INTERVIEW WITH MIKE ASHLINE,
CFO OF BOY SCOUTS OF AMERICA

1. Do you assert that the assets you allege are restricted were never commingled with unrestricted assets or assets of other entities?

2. Can you demonstrate through tracing that the assets were not used, spent, or otherwise transferred?

3. Have you ever commingled assets or funds with local councils, including placing restricted assets into segregated accounts within your cash management system?

4. Did you ever place BSA assets into the BSA Endowment Fund LP, or into a sub-find thereof?

5. Of the Bank Account Cash you list on the attached document, can you please provide adequate documentation to source the funds to specific donations?

6. Can you provide any documentation that the bank accounts are subjected to donor restrictions?

7. Can you provide any documentation that would limit  or render the bank accounts unavailable to creditors?

8. Can you provide documentation showing how and where the allegedly restricted amounts were spent, transferee, or otherwise used?

9. Are the funds constituting the LC Collateral related to letters of credit with JP Morgan Chase for the benefit of certain insurance companies?

10. Were the sources of the funds constituting the LC Collateral withdrawn from commingled sub-funds?

11. Can you please provide adequate documentation sourcing the LC Collateral to specific donations?

12. Can you show through tracing that the allegedly restricted funds of the LC Collateral were not spent, used, or transferred?

13. Please provide any donor imposed restrictions to funds contained in the General Investment Fund.

14. With respect to commingled sub-funds, were allegedly restricted funds replaced with unrestricted funds ?

15. How many sun funds allow accretions value to be used for general operating or corporate purposes?

16. Is it true that the balance of forty-eight sub funds exceeds total historical donations by $54M?

17. Can you provide adequate documentation as to if and how allegedly restricted funds from the General Investment Fund were spent, transferred, or otherwise used?

18. Are the Order of the Arrow investments in any way related to a commingled sun fund?

19. Please provide adequate documentation of the sourcing of the Order of the Arrow funds.

20. Can you Please provide any deed restrictions or donor restrictions that would prevent the sale of the Philmont Ranch?

21. Did you use the Philmont Ranch as collateral for a loan from JP Morgan?

22. Did you ever deposit receipts of Summit pledges into a main concentration account?

23. Did you ever commingle unrestricted cash with receipts from Summit pledges?

24. Can you provide any documentation that clearly demonstrates restrictions or limitations of funds within the Donor Restricted Pledges Receivable account?

25. Are there funds within the Donor Restricted Receivable account that were earmarked for the Summit project?

26. Can you please provide adequate documentation that source the Summit assets to specific donations?

27. Can you please provide documentation to show that the Gift Annuity and Pooled Income Investments are subject to donor imposed restrictions, or that those donations have not already been spent, or transferred, or otherwise used?

28. Regarding the Note Receivable from Arrow West Virginia: a) Was it a gift?  b) can you please provide adequate documentation showing the allegedly restricted amounts of the Note Receivable were not transferred, spent, or otherwise used?

29. What portion of your bank accounts are free and clear in BSA's bank accounts Is free and clear of the interests of any other person?

30. Can you provide adequate documentation to support the claim that the High Adventure facilities are restricted assets?

**This list is not exhaustive, but offered to aid in preparation for a Rule 2004-1 Interview. We reserve the right to add addition questions at the time of the examination.**

 **Collin Washburn**    3/2/22
To: Paige & 3 more... >

Hello Everyone,

I have completed my initial
disclosures, which you will all be
receiving in the mail in a few days.
We need to have our Rule 26 (f)
conference. I am suggesting either
Friday, March 4th at 2pm ET, or one
day next week immediately
following the confirmation. Eating,
since we will all be gathered then
anyway. Alternatively, if you can all
decide on a date that is reasonably
soon. In any event, I should have
discovery requests ready for each
of you soon. If neither of my dates
work for you, suggest one in the



of you soon. If neither of my dates
work for you, suggest one in the
reasonably near future that works,
and we can meet individually. I will
create Zoom links and email Them
once I have your responses.
Regards,

LONNIE WASHBURN

(C)ollin Washburn
3098 S. Highland Dr. STE 101 • Salt Lake City, UT 84106



PLAINTIFF'S
EXHIBIT

E

EMAIL REQUESTING MEET AND CONFER



**Matthew Talmo**    3/7/22
To: collinlong... & 5 more >

Mr. Washburn,

I am a colleague of Derek and Paige, and my
colleague Donna Culver (copied) and I have been
the Debtors' attorneys most directly involved with
the adversary proceeding. Regarding your email
below, we propose that all discovery in the
adversary proceeding be stayed pending the
outcome of the parties' motions to dismiss.
Otherwise, the Debtors and other defendants will
be required to expend estate money and resources
on discovery before we receive a ruling from the
Court that it will be necessary. In addition, as you
are aware, the Debtors' plan confirmation
proceedings begin one week from today which
will require substantially all of the Debtors' efforts
and attention.

As far as the Rule 26(f) conference is concerned,
given our position with respect to discovery, we
would likewise propose to schedule that
conference following the Court's disposition of the

pending motions tomorrow advising the Court that
briefing is complete and the motions are ready for
disposition.

Please let us know if you will agree that discovery
will be stayed pending resolution of the motions to
dismiss.

Thanks,
Matt

**Matthew O. Talmo**
Associate
Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(w) (302) 351-9471| (c) (302) 518-1391
**mtalmo@morrisnichols.com**
**www.morrisnichols.com**



**PLAINTIFF'S
EXHIBIT**

**F**

DEBTORS REJECTION OF PLAINTIFF'S

MEET AND CONFER OFFER



‹ Inbox  **Rule 26(f) Confe...**  ∧  ∨

4 Messages

**Collin Washburn**        3/25/22
To: Paige & 8 more... >



PLAINTIFF'S 2nd ATTEMPT TO SET

RULE 26(d) CONFERENCE

Hello Everyone,

I did not receive any response to my
suggested times for our meet and
confer conference, nor did I receive
any alternate times or dates. I did
receive the Debtors' suggestion to
delay after confirmation and the
pending motions, which I indicated
is not acceptable, as I now have a
stack of discovery requests ready
to be served.
I am available all day Wednesday,
March 30, 2022. I propose 8:30am
ET for our Rule 26(f) conference.
I'm the event that you do not wish

to hold the Rule 26(f) conference,
this is my final attempt to schedule
a meet and confer conference
pursuant to Local Rule 7026-3 with
regards to a Motion to Compel a
Rule 26 conference. I look forward
to getting this scheduled and
underway.

Best,
Lonnie Washburn

Sent from my iPhone





REJECTIONS TO SEXOND RULE 26(f)

CONFERENCE PROPOSAL (ONLY RESPONSES)

Mr Washburn – I am responding to your email on behalf of the FCR. Your summons did not schedule a pretrial conference and the Court has not held a pretrial conference, the parties' motions to dismiss your complaint are awaiting disposition by the Court, and all parties are focusing their efforts on the confirmation hearing. For these reasons, among others, we agree with the Debtors' position that the Rule 26(f) conference should not occur until the motions to dismiss are ruled upon by the Court.

Regards,



# Re: [EXT] Rule 26(f) Conference

Lonnie, I didn't receive any request for a meet and confer that I can recall or find that I may have missed. The last communication we had was on March 10. We did receive a March 2 email from you, not asking for a meet and confer but proposing dates for a 26(f) conference. We did respond both on March 4 and on March 10th with our view that there should be no discovery conference, and indeed no discovery, until the motions to dismiss have been decided by the Court. That position will not change, and I believe is shared by the other defendants, who can weigh in for themselves. I am happy to meet and confer to explain further our view. The principal reason is that we think your claims are without any merit and we do not want to spend resources on discovery if the case is not going to go forward. If you wish a meet and confer on this point, I suggest that it would need to happen either after the conclusion of the confirmation hearing or at least after the close of that hearing on some day next week. In the meantime we plan to file a motion to stay discovery for, among other reasons, the reason stated above. On your 2004, we reiterate our request for you to ask specific questions that we can get you answers to rather than seeking to depose Mike Ashline. If you would like to speak to me tonight after the conclusion of the hearing today, feel free to ring my cell number below.

Derek

Derek C. Abbott
Morris Nichols Arsht & Tunnell LLP
302-351-9357 o
302-593-4729 m



**Collin Washburn**   3/25/22
To: Collin & 9 more... >

# E-Discovery Information

Hello Everyone,
Pursuant to LR 7026-3, please find
find the attached E-Discovery
document.

BEST,
LONNIE WASHBURN



E-DISCOVERY DOCUMENT SENT BY

PLAINTIFF TO DEFENDANTS

E-Discovery Conference Disclosure Information for
Plaintiff Case no. 21-51177

