**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BOY SCOUTS OF AMERICA AND DELAWARE BSA, LLC,<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10343 (LSS)<br><br>(Jointly Administered) |
| LONNIE WASHBURN,<br><br>Plaintiff,<br><br>v.<br><br>BOY SCOUTS OF AMERICA, DELAWARE BSA, LLC, FUTURE CLAIMANTS' REPRESENTATIVE, THE COALITION, TORT CLAIMANT'S COMMITTEE, CREDITOR'S COMMITTEE,<br><br>Defendants. | Adv. Pro. No. 21-51177 (LSS)<br><br>**Re: Docket Nos. 6, 7, 10, 11, 21** |

**MEMORANDUM**
**ON MOTIONS TO DISMISS ADVERSARY PROCEEDING**

This Memorandum addresses each defendant's motion to dismiss the Complaint filed by Lonnie J. Washburn. As will be seen by the discussion below, the subsequent confirmation of the Third Modified Fifth Amended Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC resolved the issues raised in the Complaint. Therefore, each motion to dismiss will be granted.

**Background**[1]

On February 18, 2020, Boy Scouts of America and Delaware BSA, LLC (collectively, "Debtors") filed voluntary petitions under chapter 11 of the United States Bankruptcy Code. The Office of the United States Trustee appointed two official committees to serve in the case: (i) the Official Committee of Unsecured Creditors ("Creditors' Committee") and (ii) the Official Committee of Tort Claimants ("Tort Claimants' Committee"). The Court appointed a future claims representative ("FCR"). An ad hoc committee of tort claimants, self-named the Coalition of Abused Scouts for Justice ("Coalition"), also appeared and participated in these cases.

Plaintiff Lonnie Washburn appears as a creditor in these bankruptcy cases. He is representing himself, pro se. Mr. Washburn filed a proof of claim seeking in excess of $4.5 million for abuse he alleges to have suffered as a child while a Boy Scout. Mr. Washburn also filed a Motion for Entry of Order Allowing Administrative Claim.[2]

Plaintiff filed the complaint commencing this adversary proceeding on October 4, 2021.[3] He subsequently filed a First Amended Complaint on January 18, 2022.[4] Plaintiff

[1] All facts come from the First Amended Complaint as required under Fed. R. Civ. P. 12(b)(6) or are undisputed background facts to provide context. The Court makes no findings. The Court also considers the Restructuring Support Agreement upon which the First Amended Complaint is based.

[2] Mot. for Entry of Order Allowing Administrative Claim, *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. Sept. 14, 2022), ECF Nos. 10338, 10339. The Court held a hearing and ruled from the bench. Hr'g Tr. 18:8-23:8, *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. Nov. 16, 2022), ECF No. 10708. The Order denying this request was entered November 16, 2022 (*In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. Nov. 16, 2022), ECF No. 10703.

[3] Compl., ECF No. 1. While a bit confusing, the docket appears to reflect that a summons was issued on December 29, 2021 and served on Boy Scouts of America and Delaware BSA, LLC as well as counsel to the other Defendants. Summons, ECF No. 4-1. Service has been contested. In any event, the complaint was amended. *See* n.4.

[4] First Am. Compl., ECF No. 5. This First Amended Complaint appears on the docket appended to a Summons and Notice of Pretrial Conference in an Adversary Proceeding dated January 18,

seeks damages for "Civil Conspiracy, Breach of Fiduciary Duty, Unfair Discrimination based upon Plaintiff's status as a sex abuse victim."[5] Plaintiff alleges that during the course of the bankruptcy cases, Defendants entered into (Debtors, Tort Claimants' Committee, FCR, Coalition) or were supportive of (Creditors' Committee) a Restructuring Support Agreement ("RSA") which contained provisions that harmed him. Those provisions were: (i) "a pact that refused to settle even a single sex abuse claim, and even associate with any lawyer who represents a sex abuse victim, unless that lawyer joined their pact;" (ii) an agreement that Debtors would pay certain of the Coalition's attorneys' fees in the bankruptcy cases in violation of 18 U.S.C. § 155 and (iii) an agreement to include a channeling injunction in any plan of reorganization leaving Plaintiff with no ability to recover damages in a civil court or from parties covered by the channeling injunction. Plaintiff also alleges that Debtors held animosity toward abuse victims and refused Plaintiff's negotiation attempt which would have settled his claims for less than the real value. Plaintiff further alleges that Debtors negotiated with and settled claims of non-abuse claimants or indirect abuse claimants but would not negotiate with abuse victims. All of this, Plaintiff claims, violates § 1129(b)(1) of the Bankruptcy Code in that it results in unfair discrimination.[6]

Plaintiff seeks $5,600,625 in damages as follows:

- Face value of claim: $4,500,000.00

---

2022. Attached to the First Amended Complaint is Lonnie Washburn's Declaration in Support of Plaintiff's Claim. The Court will treat this declaration as part of the First Amended Complaint for purposes of this Memorandum.

[5] *Id.* at 2.

[6] *See e.g.*, Pl.'s Reply to FCR's Mot. to Dismiss, ECF No. 22.

- Emotional Damages/Mental Anguish: $ 100,000.00
- Punitive Damages: $1,000,000.00
- Legal Consultation Expenses: $ 500.00
- Office Expenses: $ 125.00

*The Restructuring Support Agreement*

On July 1, 2021, Debtors filed a motion for approval of the RSA, which was the culmination of negotiations between and among Debtors, the FCR, the Tort Claimants' Committee, the Coalition, certain individual State Court Counsel (as that term is defined therein) and the Ad Hoc Committee of Local Councils for the construct of a plan of reorganization.[7] The RSA sets forth the terms under which BSA and Local Councils would contribute certain property to a settlement trust for the benefit of holders of abuse claims. It contains affirmative covenants binding the Coalition, the Tort Claimants' Committee, State Court Counsel and the FCR to cooperate and support Debtors in good faith in drafting a plan consistent with the RSA and obtaining confirmation of such a plan. It also contains negative covenants binding those same parties to refrain from interfering with, delaying or impeding the progress of any such plan. All parties to the RSA have a fiduciary out permitting them to take or refrain from taking any action they determine in good faith to be inconsistent with their respective fiduciary duties. Plaintiff alleges that the RSA "dissolved" in that after the Court declined to approve certain aspects of the RSA, the parties to the RSA chose not to push forward with the RSA in any form.

---

[7] *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. July 1, 2021), ECF No. 5466, as subsequently amended, ECF Nos. 5813, 5868.

*The Plan of Reorganization*

On February 25, 2022—thirty-eight (38) days after filing the First Amended Complaint— Mr. Washburn filed an objection to confirmation ("Confirmation Objection"[8]) of Debtors' Second Modified Fifth Amended Chapter 11 Plan of Reorganization (as amended, "Plan"). In the Confirmation Objection, Mr. Washburn objects because (among other reasons):

- the Plan contains non-consensual third party releases, in violation of the Bankruptcy Code and Third Circuit precedent, including of solvent entities;
- the Plan violates Mr. Washburn's due process rights;
- the Plan violates § 1129(b)(1) in that it unfairly discriminates by segregating Abuse claims "based on their status as Sex Abuse victims, which in itself is a form of sex discrimination" and provides lesser treatment to Abuse claimants;
- the Plan violates § 1129(a)(7), the best interest of creditors test;
- the Plan has attempted to settle as many Non-Abuse claims as possible;
- the Plan forbids settling any Abuse Claims; and
- the Plan is not proposed in good faith.

The Plan was confirmed by Order dated September 8, 2022 ("Confirmation Order"[9]) consistent with the Opinion of this Court dated July 29, 2022 ("Opinion[10]). The Opinion

---

[8] Lonnie Washburn's Obj. to Confirmation of the Second Modified Fifth Am. Plan of Reorganization for Boy Scouts of America and Delaware BSA, LLC, *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. Feb. 25, 2022), ECF Nos. 9007, 9008.

[9] Suppl. Findings of Fact and Conclusions of Law and Order Confirming Third Modified Fifth Am. Chapter 11 Plan of Reorganization (With Technical Modifications) for Boy Scouts of America and Delaware BSA, LLC, *In re Boy Scouts of America*, Case No. 20-10343 (Bankr. D. Del. Sept. 8, 2022), ECF No 10316.

[10] *In re Boy Scouts of America and Delaware BSA, LLC*, 642 B.R. 504 (Bankr. D. Del. 2022), *aff'd*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Boy Scouts of America (In re Boy Scouts of America)*, 650 B.R. 87 (D. Del. 2023), *appeal docketed*, No. 23-1664 (Lead Case) (3d Cir. Apr. 11, 2023).

was issued after three weeks of evidentiary hearings, significant pre- and post-trial briefing and the consideration of thirty-nine objections to confirmation, including the objection filed by Mr. Washburn. While many parties appealed the Confirmation Order, Mr. Washburn did not. The Confirmation Order was affirmed by the United States District Court for the District of Delaware on March 23, 2023 ("District Court Order"[11]) and is currently on appeal to the United States Court of Appeals for the Third Circuit.

**Procedural Posture**

Each Defendant filed and/or joined in a motion to dismiss the First Amended Complaint. While each motion is tailored to the specific Defendant, each moves to dismiss under Rule 12(b)(6) contending that the First Amended Complaint does not state a cause of action because it is conclusory and devoid of factual allegations, it does not set out cognizable causes of action and no defendant has a fiduciary duty to plaintiff as an individual.[12] Further, Defendants argue that Plaintiff's claims are more properly addressed

[11] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Boy Scouts of America (In re Boy Scouts of America)*, Civ. No. 22-1237-RGA (Lead Case) (D. Del. Mar. 28, 2023), ECF No. 151.

[12] The briefing is as follows:
**Tort Claimants' Committee:** Mot. of the Official Committee of Tort Claimants to Dismiss First Am. Compl., ECF No. 6; Pl.'s Reply to Tort Claimant Committee's Mot. to Dismiss, ECF No. 20; Reply of the Official Committee of Tort Claimants in Supp. of Mot. to Dismiss First Am. Compl., ECF No. 25.
**FCR:** Future Claimants' Representative's Mot. to Dismiss Am. Complaint for Failure to State a Claim, ECF No. 7; Mem. of Law in Supp. of the Future Claimants' Representative's Mot. to Dismiss Am. Complaint for Failure to State a Claim, ECF No. 8; Pl.'s Reply to FCR's Mot. to Dismiss, ECF. No. 22.
**Debtors:** The Boy Scouts of America and Delaware BSA, LLC's Mot. to Dismiss the Adversary Compl., ECF No. 10; The Boy Scouts of America and Delaware BSA, LLC's Opening Br. in Supp. of Mot. to Dismiss, ECF No. 12; Pl.'s Resp. to BSA's Mot. to Dismiss, ECF No. 23; The Boy Scouts of America and Delaware BSA, LLC's Reply in Supp. of Mot. to Dismiss, ECF No. 28.
**Coalition:** Mot. of the Coalition of Abused Scouts for Justice to Dismiss First Am. Compl., ECF No. 11; Opp'n to the Coalitions Mot. to Dismiss Introduction, ECF No. 30.
**Creditors' Committee:** Mot. to Dismiss First Am. Compl. and Joinder of the Creditors' Committee in Co-Defendants' Mot. to Dismiss, ECF No. 21.

in the context of confirmation. Plaintiff responds that this adversary proceeding is at the preliminary stages and that he has sufficiently set out facts such that Defendants are on notice of the causes of action. Plaintiff does not specifically respond to the contention that many, if not all, of the issues he has raised or the harm he alleges are confirmation issues.

**Jurisdiction**

Subject matter jurisdiction exists over this adversary proceeding. 28 U.S.C. §§ 1334(b). No party addressed whether this proceeding is a core or non-core proceeding. The Court determines that it is core as a matter concerning the administration of the estate (§ 157(b)(2)(A)) and/or a proceeding affecting the debtor-creditor relationship (§ 157(b)(2)(O)). Regardless, no party objected to this court's entry of a final order, and the FCR and the Creditors' Committee affirmatively consented. Accordingly, the Court can issue a final order in this adversary proceeding.[13]

**Standard**

"The test in reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6) is whether, under any 'plausible' reading of the pleadings, the plaintiff would be entitled to relief."[14] "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[15] "A claim will be dismissed if, after accepting all well-pled

---

[13] Mr. Washburn does not state in the First Amended Complaint whether he does or does not consent to entry of final orders or judgment by the bankruptcy court. Fed. R. Bankr. P. 7008. This constitutes consent. Del. Bankr. L. R. 7008-1. By separate filing, Mr. Washburn did request a jury trial. Jury Demand, ECF No. 33.

[14] *Guidotti v. Legal Helpers Debt Resol., L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

facts as true and resolving all inferences in favor of the plaintiff, the court finds no entitlement to relief."[16] Because Plaintiff is appearing pro se, his pleading should be liberally construed.[17]

**Discussion**

Plaintiff's main allegation is that Defendants entered into a civil conspiracy when they executed the RSA by which Defendants bound themselves to support confirmation of a plan consistent with the terms of the RSA. As Plaintiff acknowledged, however, the RSA was not approved by the Court and "dissolved" by its own terms. Thereafter, and as set forth fully in the Confirmation Opinion, certain of the parties to the RSA pursued the Plan in confirmation proceedings beginning March 14, 2023—just two months after the First Amended Complaint was filed and served. Certain of the agreed-to provisions of the RSA were included in the Plan.

A comparison of the allegations made in the First Amended Complaint to Plaintiff's Confirmation Objection (all, as set forth above) reveals they largely concern the same issues. The Court addressed Mr. Washburn's grievances in the Confirmation Opinion. In particular, the Court addressed Mr. Washburn's main ground for the alleged conspiracy among Defendants—the different approach and treatment of Abuse Claims (i.e. claims arising from sexual conduct or misconduct) and Non-Abuse Claims (any claim asserted against BSA that is not an Abuse Claim). In the Plan, Abuse Claims and Non-Abuse Claims were placed in different classes which Mr. Washburn asserted violated the Bankruptcy Code and was unlawful discrimination on the basis of sex. The Court

[16] *In re ScripsAmerica, Inc.*, No. 16-11991 (JTD), 2019 WL 5073850, at *1 (Bankr. D. Del. Oct. 9, 2019) (citing *Guidotti*, 716 F.3d at 772).

[17] *Lamplugh v. PBF Energy*, C.A. No. 19-218 (MN), 2020 WL 434204 at *2 (D. Del. Jan. 28, 2020).

concluded that a rational basis permitted the separate classification.[18] The Court also concluded that abuse victims were not a "suspect class" for purposes of the Equal Protection Clause.[19] Further, in confirming the Plan, the Court specifically approved the channeling injunction, which Mr. Washburn asserts forms another basis for the conspiracy.[20] The Court also declined to approve the Coalition fees as part of the Plan, requiring a separate motion to be filed.[21]

Finally, the Court found and concluded that the Plan was proposed in good faith. As the Court wrote in the Opinion:

> Section 1129(a)(3) provides that the court shall confirm a plan only if "the plan has been proposed in good faith and not by any means forbidden by law." The Code does not define good faith in this context. To determine whether this requirement is satisfied, the court looks to see if the plan (1) fosters a result consistent with the Bankruptcy Code's objectives; (2) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected and (3) exhibits a fundamental fairness in dealing with the creditors. "The important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." So, courts look at whether the plan was proposed honestly and with a basis for believing that a reorganization can be achieved focusing more on the process of developing the plan than the contents. "Good faith is shown when the plan has been proposed for the purpose of reorganizing the debtor, preserving the value of the bankruptcy estate, and delivering value to creditors." On the other hand, courts may find that a plan is not proposed in good faith if it is the product of, or allows for, collusion or if the record demonstrates a breach of fiduciary duty in connection with the plan. In all events, however, denial of bankruptcy relief based on a lack of good faith "should be confined carefully and is generally utilized only in ... egregious cases."[22]

---

[18] *In re Boy Scouts of America*, 642 B.R. at 633-635.

[19] *Id.* at 634 n. 567. Mr. Washburn's argument that this discrimination also violated § 1129(b)(1) was not at issue in confirmation because holders of Abuse Claims voted in favor of the Plan.

[20] *Id.* at 608-616. As an aside, the Court sustained Mr. Washburn's (and others') objection to Debtors' settlement with the Church of Jesus Christ of the Latter-Day Saints.

[21] *Id.* at 678 n.763. Mr. Washburn did not object to this separate motion, which is currently under advisement.

[22] *Id.* at 645-46 (internal citations omitted).

The Court arrived at its conclusion after considering several objections. The Certain Insurers (as defined in the Opinion) argued that the Plan was the result of a collusive bargain between Debtors and the plaintiff constituencies (i.e. Coalition, the Tort Claimants Committee and/or the FCR).[23] Part of the Certain Insurers' focus was on the development of the Trust Distribution Procedures, which govern Abuse claim recoveries. The Lujan Claimants (as defined in the Opinion) argued, among other things, that the Plan improperly included the channeling injunction and third-party releases.[24] Mr. Schwindler argued that the Plan did not change Boy Scouts' organizational and operational structure and suggested what he believed to be a better plan.[25]

Mr. Washburn also objected to confirmation on the basis that it was not proposed in good faith. His contentions go to unfair discrimination against Abuse claimants and lack of due process. He also contended that the Plan "still contains several violations of law."[26] While the Opinion did not specifically refer to Mr. Washburn's objection in the good faith section, his unfair discrimination objection was discussed (*see supra*) and the due process argument was addressed in the context of third-party releases.[27] Further, Mr. Washburn did not put forth any evidence in support of his Confirmation Objection.

---

[23] *Id.* at 646.

[24] *Id.* at 660.

[25] *Id.* at 660.

[26] Confirmation Objection 5.

[27] 642 B.R. at 678.

Given the confirmation of the Plan, which addressed all of the underlying facts that form the basis of the alleged conspiracy, the Court will dismiss the Complaint because it is barred by the preclusive effect of the Confirmation Order. Issue preclusion (or collateral estoppel) "prohibits relitigation of an issue that has been fully and fairly litigated previously."[28] The four elements for issue preclusion are "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."[29] In confirming the Plan, the Court concluded, based on factual findings, that the Plan was proposed in good faith, that Debtors' proposed classification of claims was permissible, that the non-consensual third-party releases and channeling injunction were appropriate under Third Circuit precedent and that parties-in-interest were accorded due process. These rulings were essential to confirmation of the Plan as a contrary finding on any one of them would have precluded entry of the Confirmation Order. Accordingly, a finding for Mr. Washburn on the First Amended Complaint of conspiracy to propose a plan encompassing these provisions would be directly contrary to the Confirmation Order.[30] The Confirmation Order is final. While the Confirmation Order is on appeal, Mr. Washburn is not an appellant.

---

[28] *Anderson v. Gen. Motors LLC*, Civ. No. 18-621-LPS, 2019 WL 4393177 at *4 (D. Del. Sept. 13, 2019) (Stark, J.)

[29] *Id.* (*citing National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242, 252 (3d Cir. 2003) (alternations in original) (internal quotation marks omitted).

[30] It would also be directly contrary to the District Court Order and the accompanying 155 page Opinion, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Boy Scouts of America (In re Boy Scouts of America)*, 650 B.R. 87 (D. Del. 2023), *appeal docketed*, No. 23-1664 (Lead Case) (3d Cir. April 11, 2023).

**Conclusion**

Mr. Washburn has had his day in Court on the issues raised in the First Amended Complaint. Accordingly, the Court concludes that Mr. Washburn would not be entitled to any relief under any plausible reading of the First Amended Complaint. Separate orders will be entered granting each motion to dismiss, with prejudice.[31]

Dated: October 20, 2023

Laurie Selber Silverstein
United States Bankruptcy Judge

[31] Mr. Washburn's prepetition claim will be resolved through the Trust Distribution Procedures, the same as all other victims of Abuse.